Matter of the Probate of the Last Will and Testament of CHRISTOPHER McCAFFREY, Deceased.

(Surrogate's Court, Kings County, July, 1918.)

Trial — in action to contest will — findings of jury — evidence.

> Where a jury found that a will was duly executed and, by direction of the court with the acquiescence of the contestant, also found that the testator had testamentary capacity, with a further finding by the jury that a gift to the proponent of the remainder of the estate was the result of fraud or undue influence, a motion for a new trial on the ground that the verdict as to the last finding was against the weight of evidence will be granted, unless the court determines that the issue solely as to the residuary clause cannot be tried.

PROCEEDING upon the probate of a will.

William F. Connell, for executor.

Frank E. Johnson, Jr., for contestant.

KETCHAM, S. This is the proponent's motion for a new trial, upon the ground that the verdict so far as it is adverse to him is against the weight of evidence.

The jury found that the will was duly executed. Upon direction of the court, with the acquiescence of the contestant, they found that the testator was possessed of testamentary capacity. This left for consideration two questions, as follows:

" 3. If he did so execute such instrument, was he induced to do so by fraud, duress or undue influence of the proponent or any person in behalf of the proponent?

" 4. If he did execute such instrument, was he induced by fraud, duress or undue influence of the pro-

9

ponent or any person in behalf of the proponent, to make the residuary provision thereof, whereby he gave the rest, residue and remainder of his real and personal estate to Thomas Maguire, the proponent? "

At the opening of the trial it was conceded by the contestant that " it was the intention of the decedent to give and to leave to the persons and corporations named in the first five provisions of the will the gifts there designated." The only provision of the will which was not embraced in this concession was the residuary gift to the proponent.

The question whether there was fraud or undue influence with respect to the residuary provision was answered by the jury in the affirmative, and the finding in this regard is the only subject of this motion.

When the will was made the testator was in bed and near to death. When the draftsman, an attorney, was receiving instructions for the will there were present, beside the testator, himself, a clergyman, the physician in attendance, and a brother of the residuary legatee. The physician and the brother became subscribing witnesses and were examined in the trial in the proponent's case.

The clergyman, called by the contestant as to the occasion when such instructions were given, testified that, after the giving of directions as to all of the legacies contained in the first five paragraphs of the will, the attorney said to the testator: " You have a balance. What do you want to do with that? "

That there was then silence, without any particular answer, and finally the testator said: " I do not know what to do with it; " and that the lawyer then said: " Haven't you any good friends; haven't you anybody that you have known for a long while? " And the testator said, " Jim Maloney; " that somebody, who as the witness thought was the doctor, said,

"What does Jim Maloney want?" that in the meantime testator mentioned that he gave Mr. Maloney his watch and chain; that there was a little pause, and the attorney asked him, "Haven't you anybody that you know, anybody that has been a friend to you for a long while?" and the testator answered in reply to that, Mr. Maguire's name; that the attorney then said: "We will give it to him. He is a good friend of yours. He will take care of your soul when you are dead."

The attorney testifies that when he asked the testator what he wanted to do with the balance, the rest of his estate, he said: "Give it to Tom Maguire," and expressly contradicts the clergyman's testimony and swears that, in answer to his question, the testator did not mention Mr. Maloney's name and that Mr. Maloney's name was not brought into the conversation.

Neither of the subscribing witnesses was recalled by the proponent to testify to this disputed conversation.

The lawyer having made memorandum of the instructions, then went to another house, drew the will, and returned to the bedside of the testator, when the will was executed. It is uncontradicted that the will was read to the testator and was approved by him in the form in which it was executed.

The jury were justified in accepting the testimony of the clergyman. It does not, however, indicate anything more than the suggestion to the testator that he had better make Maguire his residuary legatee, rather than Maloney. This suggestion was not made by the legatee nor was it made by a person whose relations to the proposed legatee were beneficial. It is impossible to regard it as in any degree an importunity since the legatee was not the attorney's client and the attor-

Surrogate's Court, Kings County, July, 1918.    [Vol. 104.

ney merely asked the testator what he wanted to do with it. At the uttermost it was simply persuasive.

"A person has the right to use any reasonable and legitimate argument to induce another to make a will in a particular way. The giving of advice and the use of argument and persuasion do not constitute ground for avoiding a will made by a competent testatrix even if the will is made in conformity with the advice so given. A will cannot be avoided because of the influence of another, unless it appears that the influence exerted was so potent at the time the will was made as to take away and overcome the power of the testatrix at that time to act freely and upon her own volition. The influence of another to avoid a will must amount to coercion and duress." *Smith* v. *Keller,* 205 N. Y. 39–50.

The interval between the visit of the lawyer when he took his instructions and his visit at which the will was made is not known. After the close of the conference with the testator, he arranged with the subscribing witnesses to await his return, and went to a friend's house to draw the will; and the will, in handwriting, covers two pages. Enough time elapsed for a man who, though sick unto death, was possessed of testamentary capacity, to weigh and reconsider both the persuasion which had led him to accept the suggestion as to the residuary legatee and his own act in submitting to such persuasion.

When the will was read to him and was accepted by him, and he proceeded to an intelligent execution of it, he left no room for the belief or even the fear that it was other than an unrestrained act.

It is not to be denied that mere persuasion may be so constant and insistent that it may wear down the resistance of a mind enfeebled by an extreme illness, or that solicitations innocent in themselves may, with

other circumstances, create undue influence. It is only said that a single suggestion to a testator, made at his invitation by one not beneficially interested, and which is at once accepted by the testator, and is confirmed after a period which gave ample space for repentance, cannot in itself be taken to justify a finding that undue influence has been shown by a fair preponderance of evidence.

The statement of the contestant's witness that she heard the testator say when the will was about to be signed, " I leave my nephew $150 " is contradicted by the attorney. She was in another room listening through a partly closed door. The testator is shown by all the testimony on both sides to have had so great difficulty in speech that it was hard to understand him. The only rational effect of her testimony is that the testator recalled another person to whom he would like to make a gift, but notwithstanding the omission from the will he deliberately went on to its execution. Whatever might be the significance of the testimony, if true, it does not tend to show undue influence.

The grave and unusual question remains, whether or not a will, duly executed by a competent testator, may be set aside in part for fraud or undue influence affecting only a part. Although upon the argument of this motion the court remarked the importance of this question, neither of the counsel has discussed it.

The motion for a new trial will be granted, unless the court, upon consideration, with adequate briefs before it, shall determine that the issue solely as to the residuary clause cannot be tried.

Decreed accordingly.